IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02617-CMA-KLM

ERIC S. NELSON, and
STEVE STEPHENS,

      Plaintiffs,

v.

STEPHEN E. CSAJAGHY,
CONDIT CSAJAGHY, LLC,
JAMES E. PENNINGTON, and
THE LAW OFFICES OF JAMES E. PENNINGTON, P.C.,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

## ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court on Defendant James E. Pennington's and Defendant The Law Offices of James E. Pennington, P.C.'s (collectively, the "Pennington Defendants") **Motion to Dismiss** [#16][1] (the "Pennington Motion") and **Defendants Stephen E. Casajaghy's and Condit Casajaghy, LLC's**[2] **Motion to Dismiss** [#17] (the "Casajaghy Motion" and, collectively with the Pennington Motion, the "Motions"). Plaintiffs filed a Response [#33] (the "Pennington Response") to the Pennington Motion and the Pennington Defendants filed a Reply [#36] (the "Pennington Reply"). Plaintiffs filed a Response [#32] to the Casajaghy Motion (the "Casajaghy Response") and the Casajaghy Defendants filed

---

[1] "[#16]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] These Defendants are referred to collectively as the "Casajaghy Defendants".

a Reply [#37] (the "Casajaghy Reply").   Pursuant to 28 U.S.C. § 636(b)(1)(A) and

D.C.Colo.LivCivR 72.1(c), the Motions have been referred to the undersigned for a

recommendation regarding disposition [#54].   The Court has reviewed the pleadings, the

entire case file, and the applicable law, and is sufficiently advised in the premises.   For the

reasons set forth below, the Court respectfully **RECOMMENDS** that the Motions [##16, 17]

be **GRANTED in part** and **DENIED in part.**

## I. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Background

This case is brought by Plaintiffs against Defendants for their actions in a prior case

filed in this Court, No. 11-cv-00198-MSK-MEH (the "Sun River Lawsuit"), in which

Defendants represented Sun River Energy, Inc. ("Sun River").   *Compl.* [#1] ¶ 5.   In the

instant action Plaintiffs allege that Defendants, as counsel to Sun River, "repeatedly

misrepresented that there was no insurance that might potentially cover [Plaintiffs']

counterclaims" asserted in the Sun River Litigation.   *Id.* ¶ 55.   Plaintiffs bring two claims

against Defendants: (1) negligent or fraudulent misrepresentation and (2) negligent or

fraudulent nondisclosure.   *Id.* ¶¶ 54-68.   Plaintiffs argue that Defendants' failure to disclose

the existence of an insurance policy issued to Sun River by Navigators Insurance Company

(the "Policy"), *Compl., Ex. 22* [#1-4], injured them because:

> Whether or not insurance coverage is available critically impacts a party's
> appraisal of its case, its litigation strategy, and virtually every other decision
> related to its conduct in a lawsuit.

*Compl.* [#1] ¶ 38.   Plaintiffs allege that after multiple requests for information about

insurance coverage for the counterclaims asserted in the Sun River Lawsuit, "[u]ltimately,

Sun River produced four insurance policies, two of which provided coverage for the exact type of security claim asserted by Defendants against Sun River; at least one of those provided coverage for the relevant time period." *Id.* ¶ 36 (footnotes omitted).

As Plaintiffs explain in the Complaint, they filed three motions for sanctions relating to alleged discovery abuses in the Sun River Lawsuit. As they note, "[o]n February 21, 2013, United States Magistrate Judge Hegarty conducted an evidentiary hearing on Plaintiffs' Third Motion for Discovery Sanctions." *Id.* ¶ 42. Plaintiffs then summarize the findings of Judge Hegarty included in his Recommendation of United States Magistrate Judge (the "Sanctions Recommendation") entered in the Sun River Lawsuit. *Id.* ¶ 44; *Compl., Ex. 24* [#1-5] at 6-16 . Among other things, Plaintiffs allege that Judge Hegarty found:

- The evidence at the hearing did not establish intentional misrepresentation by Csajaghy and Pennington. It did establish that neither attorney ever took a serious look at whether there was applicable insurance, and that they learned of the existence of the applicably policy and simply believed that, because no directors or officers were named in the counterclaim, the policy would not be relevant.

- Pennington testified that be began representing Sun River in 2009. In March 2011, he became its general counsel. In connection with Sun River's Rule 26 disclosure requirements in 2011, he spoke with another employee of Sun River about the company's insurance, explaining to that employee the existence of this lawsuit and the need to disclose any potentially relevant insurance policies. That employee disclosed to Pennington that the company had a directors and officers policy and a general liability policy.

- Although Pennington did not recall having ever reviewed a directors and officers insurance policy in his career, he made the assumption, without looking at the policy, that it would not apply to counterclaims,[3] because they did not sue any directors or officers.

---

[3] Two of the three counterclaimants in the Sun River Litigation are Plaintiffs here.

- Pennington had some questions about the general liability policy and spoke to Csajaghy about it, again without looking at the policy, but Csajaghy told him nothing in the case would trigger coverage under a general liability policy.

- In the summer of 2012, one of Sun River's directors asked Pennington a question about the directors and officers policy. At that time, Pennington looked at the declaration page but did not consciously apprehend that there was coverage for securities claims.

- Only on the filing of the requesting party's motion to compel on October 10, 2012, did Pennington read the policy and, within one or two days, provide it to defense counsel.

- Pennington had resigned from his general counsel position with Sun River on September 8, 2012, because of Sun River's inability to pay him. Pennington admitted he was not paying as close attention to the case as he should have in the several months leading up to that point, due to his lack of salary and his need to begin establishing a private practice.

- Csajaghy testified that neither he nor Pennington read the actual policy. He also testified that each time he received any inquiry from defense counsel about insurance, he would pass the inquiry along to Pennington, as well as, perhaps, speak with him about it.

- Justice required the sanction of default judgment [against Sun River], despite the nonapplicability of one of the five *Ehrenhaus* factors. Four of the five factors strongly supported default judgment, so much so that they outweighed the presumption that the counterclaims should be litigated on their merits.

- Sun River's conduct caused the counterclaimants to suffer actual prejudice, because, as more fully explained below, the existence of insurance would have resulted in them litigating this case in a far different manner.

- Moreover, the nondisclosure resulted in the lack of any available resources to cover a potential judgment against Sun River, or even the cost award the Court had previously entered in this case.

- The counterclaimants were prevented from attempting to amend their counterclaims with the knowledge of potentially relevant insurance coverage. "Short of the unlikely fact scenario in which the injured party has already achieved a judgment and the insurance company

gratuitously offers up the opinion that, had they been informed of the claim they would have covered the judgment, I cannot envision a more concrete case of prejudice than that presented here."

- The nondisclosure of the insurance policy significantly interfered with the litigation process.

- Regardless of the precise mens rea of Csajaghy and Pennington in failing to investigate properly and disclose the existence of insurance, "they must be viewed as significantly culpable," especially when the defense counsel's attempts to bring the failure of disclosure to their attention did not result in a hard look at the availability of insurance but, rather, brought threats against defense counsel for continuing to seek "nonexistent" insurance information.

- Although the court agreed with Pennington's testimony that it would only make sense for him to access insurance resources if they were available (to pay for cost of defense to the counterclaims), especially when Sun River was not even paying Pennington's salary, let alone his billable hours once he left the company, "I cannot help but find that the lack of inquisition from February 2011 to October 2012 exhibited deliberate indifference to the obligation of providing relevant insurance information under Rule 26."

Plaintiffs attach the Sanctions Recommendation to the Complaint as Exhibit 24 [#1-5] at

6-16.[4]  Notably, in the Sanctions Recommendation Judge Hegarty stated:

The hearing also established that [Sun River] has no resources, having failed to pay even a $1143.50 cost award that I ordered on January 17, 2013 in connection with Defendants' successful motion to compel production of the

---

[4] When considering a motion to dismiss, the Court must usually disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). The Court may consider documents outside of the complaint on a motion to dismiss in three instances, however. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Sanctions Recommendation is a court document and is central to Plaintiffs' claims and referred to in the Complaint. Accordingly, the Court considers the Sanctions Recommendation without converting the Motions into motions for summary judgment.

insurance policy.

> [Movants] are seeking the sanction of default judgment on their counterclaim against [Sun River].  They believe that no other remedy will suffice given [Sun River's] inability to pay even a small cost award.  They assert that their potential damages under the counterclaims are at least $500,000, and that they have expended $300,000 in attorney's fees in this case.  The D&O/Securities policy in this case had a $5 million limit. [Plaintiffs] argue that [Sun River's] failure to disclose in a timely manner the existence of insurance has effectively barred them from recovering on their counterclaims.

*Sanctions Recommendation* [#1-5] at 11-12.  Ultimately, Judge Hegarty recommended that default judgment enter against Sun River on Movants' counterclaims as a sanction pursuant to Fed. R. Civ. P. 37(c)(1).

On July 16, 2013, Chief Judge Krieger held a Final Pretrial Conference in the Sun River Lawsuit during which she orally ruled on the Sanctions Recommendation.   *See Courtroom Minutes,* filed in No. 11-cv-00198-MSK-MEH, [#294] at 1.   The Courtroom Minutes state:

> The Court sustains in part Sun River's Objections (**Doc # 279**), adopts in part the Recommendation (**Doc. # 278**), and grants in part the Defendants' motion for sanctions ( **Doc # 254**) for the reasons stated on the record.

*Id.* (emphasis in original).   The transcript from the conference does not appear on the docket in the Sun River Lawsuit and has not been provided to the Court by the parties.  On October 23, 2013, Chief Judge Krieger held a bench trial in the Sun River Lawsuit and ordered that "[j]udgment will enter in favor of [Plaintiffs] and against [Sun River] as set forth in the record."  *Courtroom Minutes,* filed in No. 11-cv-00198-MSK-MEH, [#317] at 3.   That same day the Court entered judgment in favor of Plaintiffs "in the amount of $ 50,346.00" on their counterclaim against Sun River and also entered judgment in favor of Plaintiff and against Sun River "in the amount of $176,250.00, pursuant to [Colo. Rev. Stat] § 4-8-401, with costs pursuant to Fed. R. Civ. P. 54(d)(1)."  *Judgment*, filed in No. 11-cv-00198-MSK-

6

MEH, [#316] at 1.

On November 20, 2013, Sun River filed its Motion for Reconsideration of Award of Attorneys' Fees Against Plaintiff's Legal Counsel [#325] (the "Motion for Reconsideration"). In the Motion for Reconsideration, Sun River noted that "following the bench trial in this case" the Court awarded sanctions against Sun River's current and former counsel

> jointly and severally, in the amount of $20,435.50 as a sanction relating to the disclosure of insurance coverage under Rule 26. This issue came about at the pretrial conference of July 16, 2013 when the Court declined to accept the Recommendation of Magistrate Judge Hegarty that sanctions be awarded against [Sun River] (Docket #278) and instead awarded sanctions against [Sun River's counsel].

*Motion for Reconsideration,* filed in No. 11-cv-00198-MSK-MEH, [#325] at 2.

Also on November 20, 2013, Plaintiffs sought entry of judgment against Sun River's counsel, Defendants in the instant case, in the amount of $20,435.50. *See generally Motion For Entry of Judgment Against Counsel for Sun River Energy, Inc.*, filed in No. 11-cv-00198-MSK-MEH, [#326] (the "Counsel Judgment Motion"). In the Counsel Judgment Motion, Plaintiffs cited to the Courtroom Minutes from the October 23, 2013 bench trial and stated:

> Following the October 23, 2013 trial of this matter and entry of a judgment for damages in favor of Nelson and Stephens and against Sun River, the Court ordered Sun River's counsel, James E. Pennington, and Sun River's former counsel, Stephen E. Csajaghy, to pay Defendants $20,435.50 in attorney fees as a sanction for certain discovery violations within fourteen days. Doc. 317.

*Counsel Judgment Motion,* filed in No. 11-cv-00198-MSK-MEH, [#326] at 1-2.

On July 30, 2014, Chief Judge Krieger entered her Opinion and Order Granting, in Part, and Denying, in Part, Motion for Reconsideration and Directing Entry of Judgment [#337] (the "Opinion and Order"). In the Opinion and Order, Chief Judge Krieger explained

that

upon de novo review, [she] agreed with the Magistrate Judge's findings that Sun River's counsel had rendered "deficient performance" in failing to assess and disclose the insurance policy, [but] the Court disagreed with the Magistrate Judge's conclusion that Sun River itself was culpable for that failure.

Finding that the injury to the Defendants was primarily monetary – i.e. the attorney fees expended in bringing the motion for sanctions – the Court granted sanctions to the extent that Mr. Pennington and Mr. Casjaghy would be personally liable to the Defendants for the costs of making that motion. (Subsequent proceedings (# **317**) before the Court resulted in the conclusion that the amount in question was $ 20,435.00.)

. . .

The Court finds that sanctions were properly imposed against Mr. Csajaghy and Mr. Pennington under both Rule 37(b) and Rule 37(c).

. . .

The production of Sun River's insurance coverage was a component of the automatic disclosures exchanged by the parties under Rule 26(a)(1) without court intervention . . . .

. . .

The Court finds that Rule 37(c) justifies the sanctions imposed. That rule provides that any party's failure to provide discovery required by Rule 26(a) or 26(e) may result in the imposition of sanctions, including the payment of the other side's relevant attorney fees. There is no dispute that Mr. Csajaghy was responsible for Sun River's initial failure to make complete Rule 26(a) disclosures. Mr. Pennington subsequently entered the case on Sun River's behalf, knowing that Sun River had insurance policies that had not been disclosed, yet Mr. Pennington did not take timely steps to supplement Sun River's disclosures as required by Rule 26(e), even after the Defendants expressly requested [them] in writing in August 2012. Thus, both counsel engaged in conduct warranting sanctions under Rule 37(c).

. . .

Accordingly, in the absence of controlling or persuasive authority to the contrary, this Court finds that sanctions may be imposed against counsel under Rule 37(c)(1)(A) if, in its discretion, the Court deems appropriate. Here, for the reasons previously stated by the Magistrate Judge in his

8

> Recommendation and the Court in adopting that Recommendation in part, the Court finds that Mr. Pennington and Mr. Csajaghy, as the counsel who were aware of the existence of the insurance policies but who chose not to disclose or even examine them, are the proper subjects of a sanction requiring payment of the Defendants' attorney fees in bringing a motion for sanctions. The misconduct was unambiguously that of Mr. Pennington and Mr. Csajaghy, not that of Sun River, and thus, the sanction should be borne by them.

*Opinion and Order,* filed in No. 11-cv-00198-MSK-MEH, [#337] at 3-14.  On July 31, 2014, Final Judgment was entered against Defendants and in favor of Plaintiffs in the amount of $20,435.  *See generally Final Judgment*, filed in No. 11-cv-00198-MSK-MEH, [#338].  The Final Judgment is stayed pursuant to Fed. R. Civ. P. 62(d) while the issue is appealed to the Tenth Circuit Court of Appeals.  Defendants posted $24,522 with the Clerk of the Court as a bond against the Final Judgment.  *See Opinion and Order Granting Stay of Judgment Execution Upon Posting of Security and Declining to Adopt Recommendation*, filed in No. 11-cv-00198-MSK-MEH, [#367] at 3-4; *Receipt for Payment Received*, filed in No. 11-cv-00198-MSK-MEH, [#370].

With regard to the claims asserted in the Sun River Lawsuit, Plaintiffs allege that they "prevailed on their securities transfer claim pursuant to [Colo. Rev. Stat.] § 4-8-401 (for failing to register the transfer of common stock free of any restrictive legend.)." *Compl.* [#1] ¶ 49.  They further allege that "judgment on that claim entered in favor of [Plaintiffs] on October 23, 2014, in the total amount of $217,596." *Id.*  Plaintiffs aver that costs totaling $10,231.28 were also assessed against Sun River and that "[o]n May 13, 2014, judgment for an additional $100,000 in attorney fees entered against Sun River, by the parties' stipulation." *Id.* ¶¶ 50-51.  Plaintiffs allege that "Sun River has failed to pay even a penny on the judgments, despite demand for payment.  Sun River has also failed to respond to properly served debtor discovery." *Id.* ¶ 52.  Finally, Plaintiffs alleges that if the Policy

provided coverage for the judgments entered against Sun River and the Policy had been timely disclosed, either Sun River or Plaintiffs "could have timely made a claim on the" Policy. *Id.* ¶ 53.

In short, Plaintiffs bring this lawsuit to recover damages relating to their inability to recover on the Judgments entered in the Sun River Lawsuit, based on their allegation that timely disclosure of the Policy would have resulted in timely notice and coverage, which, presumably, would have resulted in payment by the insurer.

### III.  The Motions

Both Motions argue that Plaintiffs' claims are barred by claim preclusion. *Pennington Motion* [#16] at 5-7; *Csajaghy Motion* [#17] at 10-12.   The Pennington Defendants further argue that Plaintiffs fail to state claims upon which relief can be granted. *Pennington Motion* [#16] at 7-12.  In addition to attacking the claims asserted pursuant to Fed. R. Civ. P. 12(b)(6), *id.* at 7-10, the Pennington Defendants further argue that Plaintiffs' claims are based on "an alleged violation of the Federal Rules of Civil Procedure" and Plaintiffs "cannot assert an independent cause of action based on their claim that Defendants violated the Federal Rules of Civil Procedure."  *Id.* at 12.  The Csajaghy Defendants similarly argue that "the basis of [Plaintiffs'] claims in this matter is an alleged violation of the Federal Rules of Civil Procedure.  While the claims may be labeled 'negligent or fraudulent misrepresentation' and 'negligent or fraudulent nondisclosure,' [Plaintiffs] simply seek to hold Defendants accountable for their alleged nondisclosure of all potentially applicable insurance policies." *Csajaghy Motion* [#17] at 7-8.  The Csajaghy Defendants further argue that Plaintiffs "cannot assert an independent cause of action based on their claim that Defendants violated the Federal Rules of Civil Procedure."  *Id.* at

8. Finally, the Csajaghy Defendants maintain that the sanction entered against them in the Sun River Lawsuit pursuant to Fed. R. Civ. P. 37 is the exclusive remedy available to Plaintiffs.  *Id.* at 8-10.

Plaintiffs filed two responses, one of which incorporates the arguments offered in the other and adds only one additional paragraph.  Regarding the Pennington Defendants' attack on Plaintiffs' fraudulent nondisclosure claim, Plaintiffs argue that "they have properly pled all of the necessary elements" and "anticipate discovery will reveal the extent of Pennington's knowledge of applicable insurance policies." *Pennington Response* [#33] at 1.  All other arguments advanced by Plaintiffs are included in the Csajaghy Response. Accordingly, the Court focuses its attention on the Csajaghy Response [#32].

Plaintiffs argue that their claims are not barred because the claims asserted in the Sun River Litigation and this lawsuit are not identical or even similar.  *Csajaghy Response* [#32] at 5-7.  Plaintiffs note that they never asserted any claims against Defendants in the Sun River Lawsuit and that they sought sanctions against *Sun River*, not Defendants, for the discovery violations.  *Id.* at 7.  They further argue that "when [Chief] Judge Krieger awarded [them] attorney fees as a discovery sanction on July 16, 2013, [they] had not yet suffered the damages" sought in this case because they "had not yet prevailed on their securities transfer claim, and Sun River had not yet failed to satisfy the related judgment." *Id.*  Plaintiffs agree that the Federal Rules of Civil Procedure do not give rise to an independent cause of action, but argue that they do not assert claims under Rules 11, 26, or 37.  *Id.* at 8.  Instead, Plaintiffs argue that they are asserting standard common law claims.  *Id.*  Plaintiffs then offer case law to support their position that the claims asserted in this case are properly pled.  *Id.* at 8-11.  Finally, Plaintiffs argue that because Defendants

asserted in the Motion for Reconsideration, and in the pending appeal, that the Court could not impose a sanction against counsel under Rule 37, they are estopped from arguing in this case that Rule 37 provides Plaintiffs' sole remedy.  *Id.* at 12-13.

In the Pennington Reply, the Pennington Defendants argue that Plaintiffs' claims are barred by the doctrine of claim preclusion because Defendant Pennington had privity with Sun River.  *Pennington Reply* [#36] at 3.  In response to Plaintiffs' argument that they never sought sanctions against Defendants, the Pennington Defendants maintain that "Plaintiffs filed a motion to enforce the sanctions against Defendants in the" Sun River Lawsuit and they, therefore, "elected to enforce this remedy."  *Id.*  The Pennington Defendants further argue that if Plaintiffs felt they were entitled to additional remedies, they "could have raised this matter in the Sun River Lawsuit."  *Id.* at 3-4.  Regarding the question of the identity of the claims, the Pennington Defendants aver that Plaintiffs sought sanctions in the Sun River Lawsuit related to failure to produce the Policy and, therefore, the instant claims are precluded.  *Id.* at 4-5.  The Pennington Defendants also revisit their argument that Plaintiffs' claims are a veiled attempt to "hold Defendants accountable for their violation of the federal rules of civil procedure."  *Id.* at 6-7.  The Pennington Defendants further argue that Plaintiffs' claim for negligent misrepresentation fails as a matter of law because "a civil lawsuit is not a business transaction."  *Id.* at 7-8.  Finally, the Pennington Defendants argue that the Complaint does not support the required finding of mens rea necessary to state a fraud claim.  *Id.* at 8-9.

In the Csajaghy Reply, the Csajaghy Defendants argue that there is identity of claims "because the injury considered in reaching the underlying judgment for sanctions against Pennington and Csajaghy is the same injury for which [Plaintiffs] seek recompense

in this action." *Csajaghy Reply* [#37] at 2-3. The Csajaghy Defendants further maintain that

> [a]lthough all of the damages flowing from the alleged injury had not yet been incurred when [Chief] Judge Krieger issued sanctions against Defendants, this is not relevant to the question of whether there is identity of claims between those made in the underlying action, which resulted in sanctions against [Defendants] and those asserted in this action. Here, sanctions were ultimately awarded against [Defendants] by [Chief] Judge Krieger to remedy the injury for the nondisclosure of Sun River's insurance policy. Consequently, there is identity of claims.

*Id.* at 3-4. The Csajaghy Defendants further argue that Plaintiffs' claims are barred because they could have been raised in the Sun River Lawsuit. *Id.* at 4. The Csajaghy Defendants also revisit their arguments that Plaintiffs' claims are an "attempt to circumvent established law" which holds that the Federal Rules of Civil Procedure do not create a private right of action and that Fed. R. Civ. P. 37 is Plaintiffs' exclusive remedy for the nondisclosure of the Policy. *Id.* at 5-9.

On May 18, 2015, Plaintiffs filed their Supplement to Plaintiffs' Responses in Opposition to Pennington's and Csajaghy's Motions to Dismiss [#67] (the "Supplement"). In the Supplement, Plaintiffs again argue that Defendants should be judicially estopped from asserting that the sanction imposed by Chief Judge Krieger under Fed. R. Civ. P. 37 is the only remedy available to Plaintiffs because in their appeal of the Final Judgment entered against Defendants in the amount of $20,435, *see generally Final Judgment* [#338], filed in No. 11-cv-00198-MSK-MEH, Defendants argue that the Court "did not have authority to sanction them." *Supplement* [#67] at 2. Plaintiffs attach Defendants' appellate brief to the Supplement. *See generally Supplement, Ex. 1* [#67-1].

## IV. Standard of Review

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the

complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of

mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

## V.  Analysis

### A.  Claim Preclusion[5]

The United States Supreme Court determined that "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted); *see also MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) ("The doctrine of *res judicata*, or claim preclusion, will prevent a party from re-litigating a legal claim that was or could have been the subject of a previously issued final judgment." ).  "Under Tenth Circuit law, claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits." *MACTEC*, 427 F.3d at 831 (internal citations omitted).   Where these requirements are met, the claim is precluded "unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit." *Id.* (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n. 4 (10th Cir. 1999)).  Here, the parties contest only the second and third prongs of the test

---

[5]   The parties rely on Colorado state law to support their arguments regarding claim preclusion.  If the prior lawsuit resulted in a state court judgment, the Court would look to that state's law.  *See Xiangyuan Zhu v. St. Francis Health Ctr.*, 215 F.App'x 717, 719 (10th Cir. 2007) (looking to state law to determine if district court properly applied res judicata to bar claim).  However, in this case the prior lawsuit was decided by this Court.  Accordingly, the Court applies federal, not state law.  *See, e.g., Buhendwa v. Regional Transp. Dist.*, --- F.Supp.3d ---, 2015 WL 1143174, at *2, *7-8 (D. Colo. Mar. 10, 2015) (applying federal law).

stated above.  The parties do not address the first prong, but the Court notes that a district court judgment, as was entered in the Sun River Lawsuit, is final for purposes of claim preclusion even if an appeal is pending.  *Leo v. Garmin Int'l, Inc.*, 464 F.App'x 737, 740 (10th Cir. 2012) (unpublished decision) (citing *MACTEC*, 427 F.3d at 832).

### 1.      Identity of the Cause of Action

Plaintiffs argue that they "never asserted any claim against Defendants, in the Sun River Lawsuit or otherwise." *Csajaghy Response* [#32] at 7.  They further argue that they "did not learn of Defendants' dishonesty, fraud, deceit, or misrepresentation until almost two years after the Sun River Lawsuit had been commenced and long after deadlines for amending the pleadings, naming additional parties, and pursuing discovery had passed." *Id*.  Finally, they maintain that they did not seek the sanctions imposed against Defendants by Chief Judge Krieger.  *Id*.  Instead, they sought sanctions against Sun River and Chief Judge Krieger sua sponte imposed sanctions against Defendants.  *Id*.

Defendants argue that Plaintiffs were asked by Judge Hegarty on the record whether they sought sanctions against Sun River's counsel and Plaintiffs confirmed that they were seeking sanctions against Sun River, but they "could have sought sanctions against Pennington and Csajghy in the underlying action, but decided not to." *Csajaghy Reply* [#37] at 4 (citing to *Hearing Transcript*, filed in 11-cv-00198-MSK-MEH, [#285] at 139:1-13).[6]  Defendants further argue that because Plaintiffs filed the Counsel Judgment Motion, *see generally Counsel Judgment Motion*, filed in No. 11-cv-00198-MSK-MEH, [#326], "Plaintiffs elected to enforce th[e] remedy" in the Sun River Lawsuit, and therefore "cannot

---

[6] The transcript reflects that Judge Hegarty asked if Plaintiffs sought sanctions "against the company or against any individual" and Mr. McFarland responded "It's against the company." *Hearing Trans.*, filed in 11-cv-00198-MSK-MEH, [#285] at 139:7-10.

now complain that the sanctions did not adequately compensate them for their damages." *Pennington Reply* [#36] at 3. Defendants aver that "[i]f Plaintiffs felt they were entitled to additional sanctions, they could have requested th[at] relief in the underlying lawsuit, but they did not." *Id.*

The Tenth Circuit applies the "transactional approach" to determine what constitutes a "cause of action" for preclusion purposes. *MACTEC*, 427 F.3d at 831. The transactional test "provides that 'a claim arising out of the same transaction, or series of connected transactions as a previous suit, which concluded in a valid and final judgment, will be precluded.'" *Haik v. Salt Lake City Corp.*, 567 F.App'x 621, 633 (10th Cir. 2014) (unpublished decision) (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999)); *Nwosun v. General Mills Rest., Inc.*, 124 F.3d 1255, 1257 (10th Cir.1997) ("Under [the transactional] approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation.").

As Chief Judge Krieger explained in *Hernandez v. Asset Acceptance, LLC*:

"Under the transactional test, a claim should not be precluded merely because it is based on facts that arose prior to the entry of judgment in the previous action." *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir.2006); *see also Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir.2000) (stating in dicta "we agree with those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed" in the previous suit). As the Tenth Circuit stated in *Hatch*,

The filing of the plaintiff's complaint frames the scope of litigation, establishing a transactional nexus into which facts and claims are fitted or excluded for purposes of claim preclusion. "New" claims, arising after the complaint has been filed, but before judgment, may be excluded from this

transactional nexus, and thus be litigated in a subsequent action.  As the Second Circuit has explained:

> For purposes of res judicata, the scope of litigation is framed by the complaint [in the prior action] at the time it is filed.  The res judicata doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated.   Although a plaintiff may seek leave to file a supplemental pleading [pursuant to Fed. R .Civ. P. 15(d) ] to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced, he is not required to do so.

471 F.3d at 1150 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369-70 (2d Cir.1997)).  *See also Mitchell*, 218 F.3d at 1202-03 (suggesting, in dicta, that the Tenth Circuit would follow the Second Circuit's approach; and collecting cases).  *See also, e.g., Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006) (following majority rule that "the opportunity to file a supplemental complaint [to allege ongoing wrongdoing] is not an obligation."); 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 4409, at 213 (2d ed.2002) (same).

"This does not mean, however, that a plaintiff can avoid supplementing his complaint with facts that are part of the same transaction asserted in the complaint, in the hope of bringing a new action arising out of the same transaction on some later occasion."  *Hatch*, 471 F.3d at 1150 (first emphasis added, second emphasis in original).  Instead, "[u]nder the transactional test, a new action will be permitted only where it raises new and independent claims, not part of the previous transaction, based on the new facts." *Id.* (quoting *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 384 (2d Cir.2003)) (emphasis in original).

*Hatch* thus makes clear that, even when the claims asserted in a second lawsuit arose after the filing date of the first lawsuit, the transactional approach still governs whether those claims are precluded. In other words, such claims may still be barred where they are part of the same transaction or series of transactions as the first lawsuit.

970 F.Supp.2d 1194, 1202-03 (D. Colo. 2013) (footnote omitted).

Here, as Plaintiffs argue, Defendants' alleged failure to disclose the Policy, which

forms the basis of Plaintiffs' claims against Defendants in this case, did not occur until after

the Sun River Lawsuit was initiated and after the deadline for amendment of pleadings and

disclosure elapsed in that case.  In fact, as alleged by Plaintiffs, their damages did not occur until after Sun River failed to pay the amounts reflected in the Judgments entered against it in the Sun River Lawsuit.  Therefore, to argue that Plaintiffs should have or could have amended their counterclaims and/or their Answer in the Sun River Lawsuit is disingenuous.  Further, the claims asserted in this case relate to Defendants' actions during the Sun River Lawsuit, not to the counterclaims asserted in the Answer filed in that case against Sun River.  Therefore, it would be inequitable to find that Plaintiffs' claims here are part of the "same transaction" as Plaintiffs' counterclaims relating to Sun River's failure to register the transfer of common shares, civil theft, violations of various federal and state statutes, and breach of fiduciary duty.  *See Answer*, filed in No. 11-cv-00198-MSK-MEH, [#71] at 21-29.; *Alexander v. Walmart Stores, Inc.*, No. 08-cv-00070-WDM-MEH, 2008 WL 4830821, at *2 (D. Colo. Nov. 5, 2008) ("I conclude that the two events are not so related in time, space, origin, or motivation that they form the same transaction or series of transactions.").

Finally, the claims asserted in the two actions have no common facts and no common legal theories.  Therefore, the Court does not consider them "a convenient trial unit."  *Yapp*, 186 F.3d at 1227; *see Garcia v. Tyson Foods, Inc.*, 890 F.Supp.2d 1266, 1269-70 (D. Kan. Aug. 20, 2012) (finding that claim was not precluded).  As a result, the Court finds that "[u]nder the transactional test, [the instant] action [is] permitted [because] it raises new and independent claims, not part of the previous transaction, based on the new facts."  *Hatch*, 471 F.3d at 1150.

## 2. Identity of the Cause of Action

Because the Court concludes that one element of the three necessary elements has

not been met in this case, the Court does not analyze the second challenged element and **recommends** that the Motions [##16, 17] be **denied** to the extent they argue that Plaintiffs' claims are barred by the doctrine of claim preclusion.

## B.   Failure to State a Claim

"Because this is a diversity case, [the Court applies] federal law to procedural questions but the substantive law of the forum state, Colorado, in analyzing the underlying claims." *Tatten v. Bank of Am. Corp.*, 562 F.App'x 718, 720 (10th Cir. 2014) (unpublished decision) (citing *Haberman v, Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006)). Defendants challenge Plaintiffs' claims both based on an asserted failure to allege facts to support each claim and, on a more general level, argue that Plaintiffs' claims must be dismissed because Plaintiffs cannot bring a private cause of action for a violation of the Federal Rules of Civil Procedure.   Plaintiffs argue that they do not seek to bring a claim for violation of a Federal Rule of Civil Procedure, but instead "assert claims for negligent or fraudulent nondisclosure and negligent or fraudulent misrepresentation" which are "standard common law claims for relief" and are "not precluded." *Csajaghy Reply* [#32] at 8.   The Court addresses this argument first.

### 1.   Whether Plaintiffs' Claims Are Simply An Attempt to Bring Suit for a Violation of the Federal Rules of Civil Procedure

The Rules Enabling Act provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072 (1982).   Further, "the Supreme Court has consistently held that the Federal Rules of Civil Procedure were created for the purpose of regulating procedural matters and not to create new substantive rights." *Roger v. Furlow*, 729 F.Supp. 657, 660 (D. Minn. 1989).   The cases cited by Defendants make clear that if Plaintiffs attempted to bring a claim for violation of a Federal

Rule of Civil Procedure, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *See, e.g., id.* (finding that there is no cause of action for "violation of the medical discovery provisions of Rule 35 of the Federal Rules of Civil Procedure").

Plaintiffs argue that under Colorado law, parties can sue attorneys for nondisclosure and misrepresentation which are independent causes of action.  *Casajaghy Response* [#32] at 8.  They further maintain that the Federal Rules of Civil Procedure do not prohibit a party from bringing a common law claim that is based on conduct governed by the Federal Rules of Civil Procedure.  *Id.* at 13.  The cases relied on by the parties do not explicitly address the exact question at issue.  Defendants cite to a series of cases in which a party explicitly attempted to bring a cause of action for violation of a Federal Rule of Civil Procedure.  *See, e.g., Roger*, 729 F.Supp. at 659 (noting that "Plaintiff contends that the primary claim in his Complaint stems from a violation of the medical discovery provision of Rule 35 of the Federal Rules of Civil Procedure . . . ."); *Weiszmann v. Kirkland & Ellis*, 732 F.Supp. 1540, 1544 (D. Colo. 1990) (stating that plaintiff attempted to bring claim for violation of Colo. R. Civ. P. 8); *Warner v. Bank of Am. NA*, No. 11-cv-03297-PAB-KLM, 2012 WL 694506, at *2 (D. Colo. Feb. 8, 2012) (holding that plaintiffs attempted to bring claims for violations of Fed. R. Civ. P. 11).  The difference between the cases cited by Defendants and the instant case is that in this case Plaintiffs do not explicitly bring their claims pursuant to the Federal Rules of Civil Procedure.  Instead, they bring common law claims based on Defendants' omissions under Federal Rule of Civil Procedure 26(a), for which Defendants were sanctioned under Federal Rule of Civil Procedure 37.

Plaintiffs do not dispute that they cannot bring a cause of action under Fed. R. Civ. P. 37.  *Csajaghy Response* [#32] at 8.  Instead, they maintain that just because their

common law claims are based on actions for which Defendants were previously sanctioned does not mean that the facts do not give rise to valid, separate causes of action that can be asserted in this lawsuit. *Id.* at 8-10. Plaintiffs argue that because "[t]he Rules Enabling Act provides that the Federal Rules of Civil Procedure 'shall not abridge, enlarge or modify any substantive right,'" *Rogers*, 729 F.Supp. at 660 (citing 28 U.S.C. § 2072 (1982)), the Federal Rules of Civil Procedure should not limit their ability to bring common law claims available under Colorado law. *Csajaghy Response* [#32] at 8. The Court finds Plaintiffs' argument persuasive. If Plaintiffs have sufficiently alleged common law claims, those claims are not prohibited simply because Defendants were previously sanctioned for the underlying conduct.

At the motion to dismiss stage, the Court accepts Plaintiffs' factual allegations as true. *Iqbal*, 556 U.S. at 678. Taking Plaintiffs' allegations into account, the Court then "ask[s] whether it is plausible that [Plaintiffs are] entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). Therefore, the Court must determine whether Plaintiff's factual allegations sufficiently plead the common law claims alleged. Plaintiffs bring two causes of action: one for "negligent or fraudulent misrepresentation" and one for "negligent or fraudulent nondisclosure." *Compl.* [#1] ¶¶ 54-68.

### 2. Judicial Estoppel

Before examining the merits of Plaintiffs' claims, the Court will briefly address Plaintiffs' judicial estoppel argument. Plaintiffs argue that Defendants should be judicially estopped from arguing that the sanctions imposed by Chief Judge Krieger under Fed. R. Civ. P. 37 were the sole remedy available to Plaintiffs because Defendants argue on appeal that the Court did not have authority to impose sanctions against them pursuant to Fed. R.

Civ. P. 37.  *Csajaghy Response* [#32] at 13; *Supplement* [#67] at 2.  The Csajaghy

Defendants argue that judicial estoppel should not apply here because they "were

unsuccessful in arguing they could not be sanctioned under Fed. R. Civ. P. 37."  *Csajaghy*

*Reply* [#37] at 9 (citation omitted).

Defendants are correct in noting that in order for a party to be judicially estopped

from asserting a contradictory position in a later proceeding, that party "must be successful

in the first proceeding."  *Estate of Burford v. Burford*, 935 P.2d 943, 948 (Colo. 1997).

Here, Defendants were not successful in arguing against Rule 37 sanctions in the Sun

River Lawsuit.  Whether they will be successful in asserting that argument on appeal is

currently unknown.  Regardless of the outcome of the appeal, however, the Court's above

analysis makes clear that it does not find Defendants' argument that Rule 37 provides

Plaintiffs' sole remedy compelling.

### 3.    Fraud Claims

To the extent each claim is brought as a fraud claim, it requires knowledge by

Defendants.

> The elements of fraudulent concealment[7] are: (1) concealment of a material
> existing fact that in equity and good conscience should be disclosed; (2)
> *knowledge on the part of the party against whom the claim is asserted that*
> *such a fact is being concealed*; (3) ignorance of that fact on the part of the
> one from whom the fact is concealed; (4) the intention that the concealment
> be acted upon; and (5) action on the concealment resulting in damages.

*Wainscott v. Centura Health Corp.*, --- P.3d ---, 2014 WL 3955322, at *15 (Colo. App. 2014)

(citing *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 109 (Colo. 2011)) (emphasis added);

---

[7]    Colorado courts use "fraudulent concealment" and "fraudulent nondisclosure"
interchangeably.  *See, e.g., Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111
(Colo. 1998) ("To succeed on a claim for fraudulent concealment or nondisclosure, a plaintiff must
show that the defendant had a duty to disclose material information.").

*see also Kopeikin v. Merchants Mortgage & Trust Corp.*, 679 P.2d 599, 601-02 (Colo. 1984) ("In order to prevail on a claim of fraudulent concealment, a plaintiff must show that a defendant actually knew of a material fact that was not disclosed and that the defendant's intent was to cause the plaintiff to act differently than he might otherwise have done if the information had been disclosed."). Similarly, to allege a fraudulent misrepresentation claim, Plaintiff must allege sufficient facts to show:

> (1) that the defendant made a false representation of a material fact; (2) *that the one making the representation knew it was false*; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff.

*Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013) (citation omitted and emphasis added). As Defendants note, the allegations in the Complaint summarize Judge Hegarty's findings, including his conclusion that Defendants did not *intentionally* withhold the Policy or *intentionally* misrepresent facts. *Compl.* [#1] at 10-11. Specifically, the Complaint alleges that

> [t]he evidence at the hearing did not establish intentional misrepresentation by Csajaghy and Pennington. It did establish that neither attorney ever took a serious look at whether there was applicable insurance, and that they learned of the existence of the applicably policy and simply believed that, because no directors or officers were named in the counterclaim, the policy would not be relevant.

*Compl.* [#1] ¶ 44. The Complaint further alleges that "Pennington . . . did not consciously apprehend that there was coverage for securities claims." *Id.* In addition, Plaintiffs allege that "Csajaghy testified that neither he nor Pennington pulled the policy to look at it." *Id.*

As mentioned above, for purposes of considering the Motions, the Court treats Plaintiff's allegations as true. Doing so, the Court must conclude that Plaintiff's own allegations establish that the fraud claims must fail because Plaintiffs' allegations make

clear that Defendants did not act with knowledge.  Accordingly, to the extent the Motions [##16, 17] seek dismissal of Plaintiffs' fraud claims, the Court **recommends** that the Motions be **granted**.

### 4.    Negligence Claims

Plaintiffs cite to Colorado case law to support their position that the negligence claims they bring in this action are viable causes of action.  *Id.* at 8-9.  In Colorado the tort of negligent misrepresentation is defined by § 552 of the Restatement (Second) of Torts. *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A.*, 892 P.2d 230, 235-36 (Colo. 1995).  In Colorado,

> [t]he elements of a claim of negligent misrepresentation are: (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment.

*Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2001).  While Plaintiffs assert negligent misrepresentation and negligent nondisclosure as two separate claims, a claim for negligent nondisclosure is "analyzed as a claim for negligent misrepresentation."  *Central Masonry Corp. v. Bechtel Nat'l, Inc.*, 857 F.Supp.2d 1160, 1164 (D. Colo. 2012) ("Although it is unclear if Central Masonry is asserting a nondisclosure or concealment claim based on alleged negligence—as opposed to fraud—I note that under Colorado law such claim would be analyzed as a claim for negligent misrepresentation.") (citing *Sheffield Servs. Co. v. Trowbridge*, 211 P.3d 714, 724 (Colo. App. 2009)).

In *Allen*, the Colorado Supreme Court held that a "non-client may state a claim of negligent misrepresentation against an attorney for providing allegedly incorrect information during a consultation about a potential civil lawsuit."  *Id.* at 481.  The court ultimately held

that "[a]n attorney may be liable to a non-client for negligent misrepresentation." *Id.* at 482.

However, the Court cautioned that "[w]here non-clients are concerned, an attorney's liability

is generally limited to a narrow set of circumstances in which the attorney has committed

fraud or a malicious or tortious act, including negligent misrepresentation." *Id.* at 482

(citations omitted). The court explained that case law has established that attorney opinion

letters written to third parties on behalf of a client may form the basis of a claim for

negligent misrepresentation, but that the claim is not limited to those types of

circumstances. *Id.* The court found "it unnecessary to add additional elements to the claim

of negligent misrepresentation because, in this case, the [third party potential clients] did

not sufficiently plead all the elements mandated by the Restatement." *Id.* at 483.

Importantly, the *Allen* court engaged in a detailed analysis of what constitutes a

"business transaction" as required by the third element of negligent misrepresentation

under Colorado law. The court concluded:

> Therefore, a "business transaction" in the context of negligent
> misrepresentation means exactly what common understanding of the term
> implies: to state a claim of negligent misrepresentation, the misrepresentation
> must be given for the plaintiff's business or commercial purposes. Although
> a negligence lawsuit against another party has the potential to affect
> indirectly a non-client's financial or economic interests, a civil lawsuit does
> not involve a business or commercial relationship or transaction.

*Id.* at 484.

As in *Allen*, the third element of negligent misrepresentation is the key here. The

Colorado Supreme Court has made clear that the relying party's "business transaction"

must be a "commercial transaction." *Id.* at 484. The court explicitly stated that "**a civil**

**lawsuit does not involve a business or commercial relationship or transaction**." *Id.*

(emphasis added). As a result, the court concluded that prospective clients could not bring

a negligent misrepresentation claim against an attorney who provided allegedly defective advice concerning a personal injury case. *Id.* at 479. While *Allen* involved third parties who were potential clients and this case involves parties who asserted claims against Defendants' clients in a prior lawsuit, the parties in this case have not provided, and the Court has not found, any Colorado case law distinguishing *Allen's* clear statement that a civil lawsuit is not a "business transaction" for the purpose of bringing a negligent misrepresentation claim.

Plaintiffs cite to nonbinding case law supporting their argument that attorneys may be sued "for failing to disclose, or making misrepresentations regarding, the existence of insurance or the amount of coverage available." *Csajaghy Response* [#32] at 9. First, they cite *Ruck v. Schmidt*, 794 N.W.2d 114 (Minn. 2011). In that case, the Supreme Court of Minnesota held that res judicata did not bar the plaintiff's suit against her husband's attorneys for fraud on the court. *Id.* at 121. There, the husband and his attorney were accused of engaging "in an intentional course of material misrepresentation and non-disclosure concerning the value of his business interest in The Tile Shop that resulted in a 'grossly unfair' property settlement." *Id.* at 115. Unlike the instant case, in that case the alleged misrepresentation was made intentionally, not negligently.

Second, Plaintiffs rely on *Morales v. Cooperative of Am. Physicians, Inc., Mut. Protection Trust*, 180 F.3d 1060 (9th Cir. 1999), in which the Ninth Circuit analyzed California's litigation privilege as it relates to responses to interrogatories. *Id.* at 1062-64. Notably, the California legislature specifically amended its litigation privilege to "create an exception . . . for statements made 'in a judicial proceeding knowingly concealing the existence of an insurance policy or policies'. . . ." *Id.* at 1063 (quoting Cal. Civ. Code §

47(b).  Further, in *Morales*, the Ninth Circuit affirmed the district court's finding that because the interrogatory disclosed the existence of insurance, even if the response was incomplete, the litigation privilege applied.  *Id.* at 1064.  California's legislators therefore believe that disclosure of the existence of insurance coverage is an important issue, as do Plaintiffs.  While it is possible that California law may provide for the assertion of causes of action like those asserted here by Plaintiffs, this case must be decided under Colorado law.  Plaintiffs have not provided authority to hold that the unintentional nondisclosure of the existence of an insurance policy which may provide coverage for claims in litigation is an actionable tort *under Colorado law*.

Third, Plaintiffs cite to *Fire Ins. Exchange v. Bell*, 643 N.E.2d 310 (Ind. 1994), an interlocutory appeal regarding whether the plaintiff's legal counsel had the right to rely on alleged misrepresentations regarding insurance policy limits during settlement negotiations.  *Id.* at 311.  *Bell* is distinguishable because it involved a claim of fraud, not negligence.  *Id.* at 312.  While the Indiana court discussed Indiana Professional Responsibility Rule 8.4 which defines "professional misconduct" to include both fraud and misrepresentation, this Court is charged with determining whether *these* Plaintiffs have stated a claim *in their Complaint under Colorado law*.  Therefore, while the statements of the Indiana court regarding expectations for attorneys are compelling, the decision does not support Plaintiffs' argument that they have sufficiently alleged a claim of negligent misrepresentation in this case.

Fourth, Plaintiffs rely on *Slotkin v. Citizens Cas. Co. of New York*, 614 F.2d 301 (2d Cir. 1979), where the plaintiffs alleged fraud with regard to misrepresentation of the amount of insurance coverage.  *Id.* at 311; *see also id.* at 312 ("The law of New York is clear that

one who has been induced by fraudulent misrepresentation to settle a claim may recover damages without rescinding the settlement."). The Second Circuit engaged in an analysis of New York's scienter requirement, but that law is inapplicable here. *Id.* at 314.15.

Finally, Plaintiffs cite to *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. Rptr. 2d 777 (Cal. Ct. App. 2003), a case in which a California court held that an attorney retained by an insurance company who allegedly misrepresented coverage to the insured could be held liable "for making a fraudulent statement about coverage." *Id.* at 781. Again, in that case the court faced allegations of fraud:

> If an attorney commits actual fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability. While in general an attorney's professional duty of care extends only to dealings with his own client and to intended beneficiaries of the legal work performed, these limitations upon liability for negligence . . . do not apply to liability for fraud.

*Id.* at 789 (citations and quotation marks omitted). In *Shafer*, the California court relied on the Restatement Third of the Law Governing Lawyers, Rest.3d, Law Governing Lawyers, § 98, for the proposition that attorneys have a duty to not make "fraudulent misrepresentations to an attorney representing the adverse party in the transaction" and that "[t]he principles set forth in the Restatement are not limited to business transactions." *Id.* at 791 (citations and quotation marks omitted).

The problem here is that, as discussed above, the Complaint itself alleges that Defendants did not act intentionally or with the scienter necessary for a fraud claim. As a result, the cases relied on by Plaintiffs are distinguishable. Further, as the Court notes, the law in California is not binding on this Court or these litigants. While some areas of the law

in Colorado have been tailored in the insurance context for specific policy reasons,[8]

Plaintiffs provide no precedent supporting their argument that

> just as there is an exception to the general rule that lawyers do not owe
> duties to nonclients for negligent misrepresentations in a business
> transaction, there should be [ ] another exception to the general rule where
> lawyers negligently fail to disclose or make misrepresentations regarding the
> existence of insurance for at least four [sic] reasons: (1) insurance is an asset
> created specifically to satisfy claims; (2) the insurance company ordinarily
> controls the litigation; (3) information about coverage is available only from
> the defendant or his insurer; (4) whether or not insurance coverage is
> available critically impacts a party's appraisal of its case, its litigation strategy,
> and virtually every other decision related to its conduct in a lawsuit, as
> recognized by the framers of the 1970 amendment to Rule 26; and (5)
> holding lawyers responsible for negligently failing to disclose insurance or
> negligently making misrepresentations regarding the existence of insurance
> will not expose lawyers to unreasonabl[e] liability; rather they will be liable
> only to parties to whom the[y] fail to disclosure [sic] the know [sic] existence
> of potential insurance coverage, as required by Rule 26.

*Csajaghy Response* [#32] at 11. While the Court is sympathetic to Plaintiffs' argument, the

facts alleged in the Complaint do not state a cause of action for negligent misrepresentation

under existing Colorado law. Further, the last sentence of the argument quoted above

appears to rely, again, on the knowledge of the attorney making the misrepresentation.

Here, the allegations in the Complaint themselves undercut the idea that Defendants had

*actual knowledge* of the parameters of the Policy and consciously chose to lie about it.

*Compl.* [#1] ¶ 44. Therefore, to the extent the Motions [##16, 17] seek dismissal of

Plaintiffs' negligence claims, the Court **recommends** that they be **granted**.

In the Complaint, Plaintiffs allege that "Sun River has failed to pay even a penny on

the judgments, despite demand for payment. Sun River has also failed to respond to

---

[8] *See, e.g., Greystone Const., Inc. v. Nat'l Fire & Marine Ins Co.*, No. 07-cv-00066-MSK-CBS, 2013 WL 1324600 (D. Colo. March 31, 2013) ("Because of the 'unique nature of insurance contracts and the relationship between the insurer and insured,' ambiguous provisions are construed against the insurer and in favor of providing coverage to the insured.") (quoting *Cyrus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)).

properly served debtor discovery." *Id.* ¶ 52.  This reference to the procedures afforded for enforcing money judgments under Rule 69 is the proper avenue for pursuing payment of the money owed by Sun River.  Therefore, while Plaintiffs do not state claims under Colorado law that will allow them to pursue damages against Defendants, the law does afford them a means of attempting to collect the money owed by Sun River.

## VI.  Conclusion

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that the Motions [##16, 17] be **GRANTED in part** and **DENIED in part**.

The Court RESPECTFULLY **RECOMMENDS** that the Motions [##16, 17] be **DENIED** to the extent they argue that Plaintiffs' claims are barred by the doctrine of claim preclusion.

The Court FURTHER **RECOMMENDS** that the Motions [##16, 17] be **GRANTED** to the extent they argue that Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and that Plaintiffs' claims be **dismissed with prejudice**.[9]

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.

---

[9] *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citation omitted); *see also Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190-91 (10th Cir. 2014).

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

      Dated:  May 28, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge